# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA NEWNAN DIVISION

| | |
|---|---|
| VALERIE GARDNER,<br><br>    Plaintiff,<br><br>vs.<br><br>PRO-VIGIL, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>) 3:22-cv-00114-TCB-RGV<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRO-VIGIL, INC.'S MOTION FOR SUMMARY JUDGMENT

**GORDON REES SCULLY MANSUKHANI, LLP**

Leslie K. Eason
Georgia Bar No. 100186
N. DeWayne Pope
Georgia Bar No. 141891
55 Ivan Allen Jr. Blvd., NW, Suite 750
Atlanta, Georgia 30308
(404) 869-9054
leason@grsm.com
dpope@grsm.com

*Counsel for Defendant*

## INTRODUCTION

This is a textbook summary judgment case. Armed with little more than unsupported beliefs and conjecture, Plaintiff Valerie Gardner ("Gardner" or "Plaintiff") contends that Defendant Pro-Vigil, Inc. ("Pro-Vigil" or "Defendant") discriminated against her on the basis of her gender when it initially denied her commission on a sale in which she was not involved (which Pro-Vigil later paid due to its policy being unclear). Plaintiff also claims that Pro-Vigil retaliated against her after she complained about not being paid commission by issuing her a Performance Improvement Plan ("PIP") (the basis of which Plaintiff does not dispute) and terminating her employment for failure to hit her sales quota. Plaintiff accompanies her claims with the commonly-seen attempt to villainize her supervisors, while simultaneously trying to portray herself as a stellar employee whose separation must be the result of some unlawful motive. However, Plaintiff cannot present any evidence of a discriminatory or retaliatory motive by anyone at Pro-Vigil.

## SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment a non-moving party must "by her own affidavits, or by the depositions, answers to interrogatories,

1

and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).

Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, or evidence that is "merely colorable" and "not sufficiently probative" does not create a genuine dispute of fact. Id. at 249-50. The non-moving party cannot survive summary judgment by presenting "[a] mere scintilla of evidence," but must present evidence from which a jury could reasonably find in her favor. Baloco v. Drummond Co., Inc., 767 F.3d 1229, 1246 (11th Cir. 2014). In determining whether genuine issues of material fact exist, the Court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. Anderson, 477 U.S. at 255.

## ARGUMENT

I. **PLAINTIFF'S TITLE VII GENDER DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW.**

   A. **The circumstantial evidence Plaintiff has presented is insufficient to establish a claim of gender discrimination.**

Plaintiff admits that no one told her that she did not initially receive the quota split on the EHI sale because of her gender. (Defendant's SOMF ¶ 104). Therefore,

she must rely on circumstantial evidence to substantiate her claims.

Claims of discrimination relying on circumstantial evidence are evaluated using the familiar burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga.</u>, 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam).

### 1. Plaintiff cannot establish a *prima facie* case.

Under the <u>McDonnell Douglas</u> framework, Plaintiff has the burden of first presenting a *prima facie* case of discrimination. 411 U.S. 792. Specifically, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was subjected to an adverse job action; (3) her employer treated other similarly situated employees outside her protected class more favorably; and (4) she was qualified to do the job. <u>Johnson v. Gwinnett County Sch. Dist.</u>, 2012 U.S. Dist. LEXIS 170526, at *42 (N.D. Ga. October 17, 2012). For purposes of the instant analysis, Pro-Vigil does not dispute that Plaintiff is female and that she was qualified for her job. Thus, the only questions remaining are whether Plaintiff suffered an adverse employment action, and whether she was treated less favorably than similarly situated employees outside her protected class. The answer to both of these questions is a definitive "no."

Plaintiff did not suffer an adverse employment action. The Eleventh Circuit Court of Appeals has stated that "to prove adverse employment action in a case under

Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, and privileges of employment." Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1240 (11th Cir. 2001) (emphasis in original). Here, the record evidence establishes that Plaintiff was paid all of the commission that she was owed on the EHI deal and suffered no monetary harm. (See Defendant's SOMF ¶ 110-111.)

Plaintiff also cannot show that she was treated less favorably than similarly situated employees outside her protected class. To satisfy this element of a *prima facie* case, Plaintiff must demonstrate that she was similarly-situated to the alleged comparator employees in every relevant aspect. Pierri v. Cingular Wireless, LLC, 397 F.Supp.2d 1364, 1372 (N.D.Ga. 2005). The quality and the quantity of the comparator's conduct must be "nearly identical" in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). A court will grant summary judgment in favor of the employer when a plaintiff, in the absence of other evidence of discrimination, cannot demonstrate that a similarly-situated employee exists. Pierri, 397 F.Supp.2d at 1375.

Plaintiff contends that male Mobile Territory Managers Rian Martin, Paul Curtis, Carlos McCluskey, Chris Bowman and David Spector were allowed to

4

participate in the EHI sales and split commissions while she initially was not. (See Defendant's SOMF ¶ 106.) However, Plaintiff admits that she does not know Martin's, Curtis', McCluskey's, Bowman's or Spector's involvement in the EHI mobile program sales, or why they were allowed to participate. (See Id. ¶ 107-108) Plaintiff merely asserts that because the Mobile Territory Managers that were included in the EHI deals are male, and she was not included in the EHI deal and is female, there must be some unlawful motive. (See Id. ¶ 105.) However, this allegation alone is not enough to establish a comparator, who must be similar in all relevant respects. Pierri, 397 F.Supp.2d at 1375.

In Wilson v. B/E Aerospace, Inc., a female plaintiff sued her employer asserting, *inter alia*, a Title VII claim for termination based on gender. 376 F.3d 1079, 1085 (11th Cir. 2004). The Eleventh Circuit Court of Appeals reviewed the award of summary judgment in favor of the employer as to the claim. Id. The Court reasoned that summary judgment is appropriate if the plaintiff fails to demonstrate the presence of a similarly situated employee, in the absence of other evidence of discrimination. Id. at 1091. The Court, using this framework, highlighted that the plaintiff failed to identify any similarly-situated male employee who was treated better than she was. Id. at 1091-92. The Court also pointed out that the plaintiff also failed to show any other evidence of discrimination. Id. at 1092.

Other than pointing to the fact that the Mobile Territory Managers allowed to participate in the EHI deals are male, Plaintiff offers no other evidence of discrimination. Even accepting Plaintiff's allegations as true for purposes of this analysis, these facts are not enough to sustain a claim of gender discrimination.

### 2. Pro-Vigil has articulated a legitimate, nondiscriminatory reason for its employment decisions with respect to Plaintiff.

Even assuming that Plaintiff could establish a *prima facie* case of discrimination (which she has failed to do), the burden would shift to Pro-Vigil to articulate a legitimate, nondiscriminatory reason for its employment decision. Brown v. Bibb Cnty. Props., LLC, 602 Fed. Appx. 755 (11th Cir. 2015). "Legitimate" simply means a nondiscriminatory explanation; an employer need not prove that there was good reason or cause for the action. Jianxin Fong v. Sch. Bd., 590 Fed. Appx. 930 (11th Cir. Fla. 2014). The employer is not required to persuade the court that the reason justified the action, only that the reason was nondiscriminatory. Id. Under anti-discrimination laws, an employer can take an adverse employment action against an employee for a good reason, a bad reason, or for no reason at all, so long as it is not for a prohibited reason. Id., see also Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984);

Amini v. City of Minneapolis, 643 F.3d 1068 (8th Cir. 2011) (noting that an employer's burden to articulate a nondiscriminatory justification is not onerous).

It is beyond reasonable dispute that Pro-Vigil had a legitimate, non-discriminatory reason to not initially give Plaintiff commission on the EHI sales. The original intent by Pro-Vigil's executive committee in allowing fixed solutions to sell mobile solutions was that if the mobile territory manager was involved with the sale that was brought to them by the fixed division, then the mobile territory manager was eligible for the 50-50 split, and if the fixed division managers decided to do it all themselves, then it would not be quota credit eligible. (See Defendant's SOMF ¶ 56-57.) It also is undisputed that Plaintiff did not have any involvement in the EHI deal at the Atlanta Motor Speedway. (Id. ¶ 33-35.)

Even if Plaintiff disagrees with Pro-Vigil's actions or suggests that they were unfair, misguided, or just plain wrong, this is irrelevant for purposes of the analysis.

### 3. Plaintiff cannot show that Pro-Vigil's legitimate, non-discriminatory reason is pretextual.

The burden now shifts back to Plaintiff to offer "sufficient admissible evidence from which a rational fact finder could find that [defendant's] proffered nondiscriminatory reasons are either untrue or were not the real reasons for the action, and that intentional discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). To show that Pro-Vigil's legitimate, non-

7

discriminatory reasons are pretextual, Plaintiff must submit "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of [Pro-Vigil's] proffered reasons for its challenged action." Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997). The Eleventh Circuit has repeatedly said that in attempting to establish pretext, a plaintiff may not simply quarrel with the wisdom of the employer's given reason; instead, as long as the stated reason "is one that might motivate a reasonable employer," the plaintiff "must meet that reason head on and rebut it." See Chapman v. AI Transport, 229 F.3d 1013, 1030 (11th Cir. 2000). Plaintiff has not met this burden.

Prior to April 2020, Pro-Vigil fixed territory managers were not able to sell mobile solutions. (See Defendant's SOMF ¶ 22.) At the onset of the pandemic, Pro-Vigil's executive team discussed ways that they could engage the fixed sales team knowing that a lot of sites were temporarily closing down nonessential businesses and allowing them to sell mobile products. (Id. ¶ 21.) Pro-Vigil's executive team discussed a quota split being applied to opportunities where the mobile sales team was actively involved in the sale of mobile solutions by the fixed sales team. (Id. ¶ 23.)

On April 2, 2020, Kirk Lynd sent an email to the fixed and mobile teams concerning the new policy on the fixed division selling mobile solutions to fixed

clients. (Id. ¶ 24 & Ex. 6.) Lynd's email stated that "[a]ny Fixed TMs [Territory Managers] selling temporary mobile solutions to fixed customers will warrant a 50/50 quota credit split with the corresponding mobile TM. In some cases, the mobile TM may not need to get involved, but if so, the split will warrant the pre or post-sales support required." (Id.) Despite the fact that she was never paid commission on sales for which she had no involvement, Plaintiff interpreted Lynd's email to mean that the fixed territory manager would split any sales commission 50/50 with the mobile territory manager for sales in their territory even if the mobile territory manager had nothing to do with the sale. (Id. ¶ 26-27.)

Plaintiff was told by Mike D'Amore in May 2020 when she complained about not being involved in the EHI deal at the Atlanta Motor Speedway that Lynd's April 2 email was not accurate and that the fixed division was "given the latitude to take the opportunity to install complete" without involvement of the mobile division. (Id. ¶ 44, 46.)

After Plaintiff complained to Dave McCrossen about not getting paid commission on the EHI deal, McCrossen enlisted the help of CFO Myles Osswald to review the matter. (Id. ¶ 53.) Pro-Vigil agreed to pay Plaintiff commission on the EHI deal even though she was not involved because Osswald determined the policy intent was not clear in Lynd's email. (Id. ¶ 59.) Osswald was not even aware that

9

there was a gender component to Plaintiff's claims when the decision was made to pay her commission. (Id. ¶ 60.)

There are no weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Pro-Vigil's proffered legitimate reasons for its actions such that a reasonable factfinder could find them unworthy of credence. There is nothing in the record that would establish both that Pro-Vigil's cited reasons for not initially paying Plaintiff commission on the EHI deal were false AND that discrimination was the real reason. That fact prevents Plaintiff from establishing pretext as a matter of law.

## II.   PLAINTIFF'S TITLE VII RETALIATION CLAIM FAILS AS A MATTER OF LAW.

A plaintiff may establish a *prima facie* retaliation claim by showing that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002); Carson v. MARTA, 572 Fed. Appx. 964, 969 (11th Cir. 2014). To establish the causal connection, Plaintiff must show that the decision-maker knew of her protected conduct. Clemons v. Delta Air Lines Inc., 625 Fed.Appx. 941, 945 (11th Cir. 2015). Additionally, Plaintiff must show that the adverse action and protected activity were not wholly unrelated. Id.

Plaintiff alleges that she was retaliated against for complaining about gender

10

discrimination. Specifically, Plaintiff contends that she complained about not receiving commission on the EHI deals, and then was retaliated against by being placed on a PIP and her employment terminated. (See Defendant's SOMF ¶ 119.)

Plaintiff must "establish that the employer was actually aware of the protected expression at the time it took adverse employment action. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Here, Plaintiff admits that that she never told D'Amore that she believed they were discriminating against her because of her gender. (See Defendant's SOMF ¶ 115.)

Pro-Vigil anticipates that Plaintiff will argue that she raised the issue of gender discrimination "through the emails" when she asked "[w]hy weren't we given the opportunity like the other guys." (Id. ¶ 113.) However, Plaintiff admits that in her conversations with D'Amore, when she referenced "those guys," she never indicated to D'Amore that she believed that her gender was the reason she was not able to participate in those deals. (Id. ¶ 114.) Plaintiff can present no evidence that D'Amore knew she was making claims of gender discrimination at the time he issued the PIP.

For a retaliation claim, Plaintiff must also prove that she suffered an adverse employment action.  Plaintiff's evidence, viewed in a light most favorable to her, is that she received a PIP from a supervisor relating to her job performance.  Plaintiff points to no evidence that she suffered any losses with respect to pay, benefits, or

11

prestige as result of the issuance of the PIP.  See Richardson v. Jackson, 545 F.Supp.2d 1318, 1321 (N.D.Ga. 2008). There also is no evidence that she suffered a "*serious and material* change in the terms, conditions, and privileges of employment." Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1240 (11th Cir. 2001) (emphasis in original).  Negative work evaluations, without more, are wholly insufficient to constitute an adverse employment action for purposes of a Title VII gender discrimination claim.  Akins v. Fulton County, Ga., 420 F.3d 1293, 1301 (11th Cir. 2005).

Pro-Vigil also anticipates that Plaintiff will argue that she engaged in protected activity when her counsel sent the June 30 letter to CEO Lee Orr.  While such could constitute protected activity, Plaintiff had already been informed that she would be paid commission on the EHI deal on which she complains in the letter. (See Defendant's SOMF ¶¶ 61-62.) Plaintiff also cannot show that any decision-maker was aware of the letter at the time of her termination. Plaintiff has no evidence that Orr reviewed the letter prior to her July 1 termination or that he shared the letter with anyone else at Pro-Vigil prior to Plaintiff's termination. (Id. ¶ 97.) Regardless, it is undisputed that Metzler, who made the decision to terminate Plaintiff's employment, was not aware of the June 30 letter until after this lawsuit was filed. (Id. ¶ 123.)

Even if Plaintiff can show that she engaged in protected activity of which Pro-Vigil was aware, she cannot show that Pro-Vigil's legitimate, non-retaliatory reasons for issuing the PIP or terminating her employment are pretext.

Pro-Vigil's Direct Channel Rules of Engagement ("ROE") expressly provide that a territory manager "will be placed" on a PIP if: (a) "1 month with <25% quota attainment"; (b) "2 consecutive months <50% quota attainment"; or (c) "3 months in any 6-month period <50% quota attainment." (Id. ¶ 8.) Plaintiff admits that prior to December 2019, she had never had a month with sales less than 25% of the $6,500 quota, or $0 in sales. (Id. ¶ 64.) Plaintiff also admits that in January and April 2020, she had $0 in sales, and less than 25% of quota in May 2020. (Id. ¶ 66, 69, 70, 75.) The PIP issued by D'Amore on June 9, 2020 was expressly based on Plaintiff having less than 25% quota during those months. (Id. ¶ 71.)

Plaintiff also cannot show that other employees outside of her protected group engaged in similar behaviors and were not treated similarly. In fact, at the same time that D'Amore issued a PIP to Plaintiff, he also issued a PIP to Dan Jarosz for having three months in a six-month period with less than 50% sales quota attainment. (Id. ¶ 129.) Both Plaintiff and Jarosz were instructed to improve their performance by, among other things, hitting their monthly quota target of $6,500. (Id. ¶ 77, 130.)

After Metzler took over D'Amore's position as Divisional Sales Manager, she

13

did her own due diligence on both Plaintiff's and Jarosz's PIPs. (Id. ¶ 89.) In June, neither Plaintiff nor Jarosz hit their quotas – Plaintiff had sales of $3,610 and Jarosz had sales of $0. (Id. ¶ 91, 131.) Due to their inconsistency in sales, Metzler terminated Plaintiff's and Jarosz's employment. (Id. ¶ 92, 132.)

Moreover, even if Plaintiff can show that her complaints were protected activity, she fails to produce a causal link between those complaints and any adverse action. At the time D'Amore issued the PIP, Pro-Vigil had already agreed to pay Plaintiff commission on the EHI deal. (Id. ¶ 61, 62, 76.) Metzler was not even aware of any of Plaintiff's complaints concerning the payment of commission at the time of her decision to terminate Plaintiff's employment. (Id. ¶ 84, 123.)

Based on these undisputed facts, Plaintiff cannot establish a claim of retaliation as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Pro-Vigil's Motion for Summary Judgment.

Respectfully submitted this 13th day of April, 2023

              **GORDON REES SCULLY MANSUKHANI, LLP**

              */s/ N. DeWayne Pope*
              Leslie K. Eason
              Georgia Bar No. 100186

                                                N. DeWayne Pope
                                                Georgia Bar No. 141891
                                                55 Ivan Allen Jr. Blvd., NW
                                                Suite 750
                                                Atlanta, Georgia 30308
                                                (404) 869-9054
                                                leason@grsm.com
                                                dpope@grsm.com

                                                *Counsel for Defendant Pro-Vigil, Inc.*

## **CERTIFICATION**

In accordance with Local Rules 5.1(C) and 7.1(D), I hereby certify that this document has been prepared in 14 point, Times New Roman font.

Dated:    April 13, 2023

>                              */s/ N. DeWayne Pope*
>                              N. DeWayne Pope
>                              *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 13th day of April 2023, electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRO-VIGIL, INC.'S MOTION FOR SUMMARY JUDGMENT** using the Court's CM/ECF e-filing system, which will automatically and electronically serve the parties of record in this matter.

*/s/ N. DeWayne Pope*
N. DeWayne Pope
*Counsel for Defendant*
